UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

LESLIE S. MCKINNEY,           )
                              )
    Plaintiff,                )
                              )
v.                            )   Case No. CV412-312
                              )
CAROLYN W. COLVIN,            )
*Commissioner of Social Security,* )
                              )
    Defendant.                )

## REPORT AND RECOMMENDATION

Leslie Scott McKinney applied for Supplemental Security and Disability Insurance benefits on April 27, 2009, claiming that he became disabled on June 28, 2003 based on a history of back problems and mental impairments. (Tr. 25-26, 135-47.) His application was denied both initially and on review. (Tr. 23.) An Administrative Law Judge ("ALJ") conducted a hearing and later denied benefits. (Tr. 34, 39.) Although McKinney submitted additional evidence to the Appeals Council, it denied his request for review, making the ALJ's decision the

final decision of the Commissioner. (Tr. 1-4.) He then filed a complaint for judicial review in this Court, contending that the Social Security Appeals Council erred in evaluating the new evidence. (Doc. 1.)

I. **STANDARD OF REVIEW**

Affirmance of the Commissioner's decision is mandatory if her conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159. This Court cannot substitute its judgment for that of the Commissioner. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991).

The burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To determine whether he has met the burden, the Court looks to the five-step evaluation process set forth in the Social Security Regulations. 20 C.F.R. § 416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that he has not engaged in substantial gainful activity. *Jones*, 190 F.3d at 1228. At step two, he must demonstrate a severe impairment or combination of impairments. *Id.* Then, at step three, if the claimant's impairment meets or equals a listed impairment, he is automatically found disabled. *Id.* If not, he must advance to step four, which requires him to prove an inability to perform past relevant work. *Id.* If he cannot perform past relevant work, stage five shifts the burden to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Id.*

In most Social Security appeals, the Court reviews the decision of the ALJ under the five-step framework as if it were the Commissioner's "final" decision. When a claimant challenges the Appeals Council's

treatment of new evidence, however, some additional principles apply. "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1262 (11th Cir. 2007). In other words, the Court is tasked with determining whether the Appeals Council properly determined whether the new evidence was "new, material, and chronologically relevant [(i.e., whether it relates to the period on or before the date of the administrative law judge's decision)]," and if it was, whether "'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id.* at 1261 (quoting 20 C.F.R. § 404.970(b)).

The Appeals Council may deny review if the new evidence does not show the ALJ's decision to be erroneous. *See id.* at 1262. But when a claimant properly presents new evidence and the Appeals Council denies review, it must show in its written denial that it has adequately evaluated the new evidence. *Epps v. Harris*, 624 F.2d 1267, 1273 (5th

Cir. 1980).[1] If the Appeals Council merely "perfunctorily adhere[s]" to the ALJ's decision when presented with moderately probative evidence, the Commissioner's findings are not supported by substantial evidence and the case must be remanded "for a determination of [the claimant's] disability eligibility reached on the total record." *Id.*; *compare Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 746 (11th Cir. 2011) (remanding because the Appeals Council did not articulate specific findings when the new evidence was from treating physician and contained a residual functional capacity assessment "that was supported by significant clinical findings from three examinations performed" by treating physician), *with Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (finding Appeals Council considered and incorporated additional evidence, which had little probative weight, and was not required to explain its denial of review, and explaining that in such cases "because a reviewing court must evaluate the claimant's evidence anew, the [Appeals Council] is not required to provide a thorough explanation when denying review").

---

[1] Decisions of the former Fifth Circuit on or before September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

5

## II. ANALYSIS

McKinney submitted several pieces of evidence to the Appeals Council, including school records from 1968-1978 (tr. 227-231) and a letter and treatment notes from Lewis J. Litwack, M.D. (Doc. 12-3 (letter); doc. 12-4 (treatment notes); tr. 443-454 (treatment notes, expurgating those from dates after the entry of the ALJ's opinion).) The treatment notes and letter are of little probative value, so the Court discerns no reversible error as to the Appeals Council's decision concerning them.[2] The school records, however, were deserving of at least some treatment.

---

[2] The treatment notes cover the period from September 2, 2010 through September 29, 2011. (Doc. 12-4.) The Appeals Council properly chose not to incorporate into the record those portions of the file past the date the ALJ entered his decision, January 26, 2011. (Tr. 2; tr. 443-454.) Of the remaining records, some were cumulative, though the Appeals Council fails to point that out. The ALJ had access to the records from Dr. Litwack's office from September 2, 2010 through October 14, 2010. (Tr. 430-442.) He did not, however, have access to Dr. Litwack's records from November 2010 through January 2011. In any event, the Commissioner correctly asserts that the treatment notes add little to the notes to which the ALJ already had access in making his determination. (Doc. 16 at 8-9.) That is, even if the Appeals Council erred by failing to provide an explanation for its finding that these materials were not persuasive, there is simply no reasonable possibility that the evidence would have changed the ALJ's decision. Hence, any error here was harmless. *See, e.g., Hudson v. Colvin*, 2013 WL 5522743 at *15 (N.D. Fla. Oct. 3, 2013).

The Appeals Council clearly erred, however, when it completely excluded Dr. Litwack's letter on the basis that it was not relevant to the time period under review. (Tr. 2.) The letter addresses the *entire* time period that Dr. Litwack treated McKinney. In that November 23, 2010 letter, he explicitly states that during the

Those records reflect that McKinney had no grade placement in reading for many years, was consistently placed in either educable or trainable mentally retarded classes, and was marked as a "Non reader" in seventh grade, the year before he left school for good. (Tr. 228.) The ALJ, without the benefit of these records, was not convinced that McKinney was functionally illiterate or suffered from any cognitive disabilities unrelated to his history of drug abuse, despite a consultative examiner's report finding that McKinney had learning and cognitive deficits.[3] (Tr. 26-27.) He discounted the opinion of the consultative

---

treatment period *from September 2010 through September 2011*, he found McKinney "to be very credible and compliant." (Doc. 12-3 at 2.) Also, he described McKinney's functionality as being extremely limited: "he would have been limited in his capacity for bending, lifting and carrying any heavy objects for commercial purposes due to his lumbar pain and leg muscular atrophy." (*Id.*) "Certainly he would be unsafe on ladders or any heights due to this and probably unsafe driving secondarily to limitations of the rotation of his cervical spine." (*Id.*)

Nevertheless, the Commissioner again correctly asserts that the letter is not particularly probative considering the evidence that was already in the record. (Doc. 16 at 16 (Note, however, that the Court rejects the Commissioner's assertion that the assessment only applied on the date the letter was written, since Dr. Litwack used the words "at this time"; that cannot be a correct interpretation of the assessment, for Litwack clearly meant "during the time period I treated McKinney.").) The Court, despite its reservations about the Appeals Council's failure to at least incorporate the letter into the administrative record, agrees that the error was harmless as its consideration would not have changed the outcome of the case.

[3] Though McKinney hasn't raised the matter, the ALJ's mental health determination was informed in part by his own conjecture. Despite medical evidence showing that claimant suffered from some sort of intellectual impairment, depression, and anxiety, and despite the fact that there is no evidence suggesting that

7

examiner based in part on McKinney's failure to notify the examiner about a history of polysubstance abuse that had landed him in the hospital in 2006. (*Id.*) Without the examiner's report, the only evidence supporting the existence of the disabilities was McKinney's own word, and again the ALJ discounted that evidence on the basis of his deception as to his drug history, and he also thought it was unlikely that a functionally illiterate person with learning deficits could have performed the complex mechanical repairs McKinney performed when he worked maintenance for a box manufacturing company. (*Id.*) The ALJ further noted that even if claimant *was* functionally illiterate, it could be due to his limited education instead of any cognitive or learning impairments. (*Id.*) He thus found that "[c]laimant's cognitive disorder and learning disorder are not severe impairments" at step-two of the five-step analysis.

The school's records are powerful evidence to the contrary. They suggest that the school system believed McKinney had serious cognitive impairments at a very young age and that he was functionally illiterate.

---

claimant remains under the influence of such drug abuse, the ALJ held that "claimant's putative depressive disorder symptoms are actually symptoms of polysubstance abuse." (Tr. 26-27.)

8

The Appeals Council, however, brushed the records aside without analysis, stating "[i]n looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 1-2.)

While the Commissioner insists that the evidence would not have affected the ALJ's determination (doc. 16 at 9-14), she is mistaken. It is very likely that their inclusion would have changed the ALJ's step-two analysis, which in turn would have left him with two more "severe" impairments to address throughout the rest of the opinion.[4] Indeed, in a

---

[4] While the regulations use terms like "severe" and "significant," the step-two threshold is not a high one. Step two is "designed to screen out only clearly groundless claims." *Jones v. Astrue*, 2011 WL 1587731 at *7 (S.D. Ga. March 29, 2011). It screens out "those applicants whose medical problems could 'not possibly' prevent them from working." *Stratton v. Bowen*, 827 F.2d 1447, 1452 n.9 (11th Cir. 1987) (quoting *Baeder v. Heckler*, 768 F.2d 547, 551 (3d Cir. 1985)); *see Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account."); 70C Am. Jur. 2d *Social Security and Medicare* § 2006 (2011) (all that must be shown is a *de minimis* impairment or combination of impairments "which are of medical severity sufficient to significantly limit physical or mental ability to do basic work activities").

The Eleventh Circuit has described the step-two test as the "slight abnormality" test. *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987) (*per*

separate proceeding covering a later time period, a different ALJ explicitly relied upon the school records in finding that McKinney is illiterate and has a step-two severe non-specified cognitive disorder and a learning disorder. (Doc. 12-5 at 5-7.) Based on these limitations, among others, that ALJ found that claimant only retains the capacity to perform simple, routine, repetitive unskilled work that can be learned in a month or less, and that he may have, at most, occasional work interaction with co-workers and supervisors and no interaction with the general public. (*Id.*) They also played a part in that ALJ's determination that claimant was disabled starting as of June 1, 2011. (*Id.* at 8.)

While the subsequent finding of disability is not determinative here, it is somewhat incongruous for the Commissioner to insist that the Appeals Council made no error when it failed to elaborate on evidence

---

*curium*). Under that test, "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id.* It "allows only claims based on the most trivial impairments to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). The claimant's burden is "mild." *Id.* Hence, "the application of a threshold severity regulation that is greater than *de minimis* is invalid under the terms of section 205 *et seq.* of the Social Security Act." *Stratton*, 827 F.2d at 1453. That is because "[a]n overly stringent interpretation of the threshold severity requirement violates the statutory standard for disability by precluding an administrative determination of the crucial statutory question: Whether, in fact, the impairment prevents the claimant from working, given the claimant's age, education and experience." *Id.*

that another ALJ found to be of such significant import that she explicitly relied upon it when discounting a state psychological consultant's opinion. (Doc. 12-5 at 7.) It was highly probative evidence supporting McKinney's claim, and the Appeals Counsel was obligated to elaborate upon it rather than "perfunctorily adhering" to the ALJ's opinion.

## III. CONCLUSION

The Appeals Council committed reversible error by failing to provide a sufficient reason for why claimant Leslie Scott McKinney's school records would not have affected the ALJ's determination. Accordingly this case must be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). *Ingram*, 496 F.3d at 1269 ("a sentence four remand, as opposed to a sentence six remand, is appropriate when "evidence properly presented to the Appeals Council has been considered by the Commissioner and is part of the administrative record").

**SO REPORTED AND RECOMMENDED** this ___20th___ day of December, 2013.

/s/ G.R. Smith
_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA